IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MAX A. RADY,                                    *
                                                *
        Plaintiff                               *
                                                *
v.                                              *    CASE NO. 4:25-CV-4031
                                                *
BOSTON CONSULTING GROUP, INC.,                  *
DE BEERS PLC, D/B/A DE BEERS GROUP,             *
ANGLO AMERICAN PLC,                             *
ORIGYN FOUNDATION,                              *
DE BEERS JEWELLERS (US), INC.,                  *
SIGNET JEWELERS,                                *
BRILLANT EARTH INC.,                            *
DE BEERS UK LIMITED,                            *
ORIGYN RESEARCH USA LLC                         *
PAN-INDUSTRIAL LLC,                             *
PAN INDUSTRIAL PLATFORMS, LLC, AND              *
PAN INDUSTRIAL SERVICES LLC                     *
                                                *
        Defendants.                             *
                                                *
    *    *    *    *    *    *    *    *    *    *    *

**PLAINTIFF'S OPPOSITION TO DEFENDANTS PAN-INDUSTRIAL LLC, PAN
INDUSTRIAL PLATFORMS, LLC, AND PAN INDUSTRIAL SERVICES LLC'S
MOTION TO STRIKE SECOND AMENDED COMPLAINT AND REPLY IN FURTHER
SUPPORT OF THE PAN INDUSTRIAL DEFENDANTS'
<u>MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ....................................................................................................... 6

    I. The Court Can Exercise Specific Personal Jurisdiction Over Pan
Industrial Due to Its Connections with Origyn and the Actions of Mr.
Fathreree .......................................................................................................... 7

    II. The Court Can Exercise General Personal Jurisdiction Over Pan
Industrial Because Its Operations are Sufficiently Substantial as to Render
Pan Industrial at Home in Texas ..................................................................... 9

    III. Venue is Proper in this District Because Pan Industrial Has Committed
Acts of Infringement and Established a Place of Business Here .................... 9

    IV. Leave to Amend Is Not Required Because a Scheduling Order Has
Not Been Entered .......................................................................................... 10

    V. Dr. Rady's Second Amended Complaint Sufficiently Asserts Claims
for Inducement to Infringe the Asserted Patents .......................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bullion v. Gillespie,*
  895 F2d 213, 216 (5th Circ. 1990) ............................................................7

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462, 479 (1985) .......................................................... 7

*Daimler AG v. Bauman,*
  571 U.S. 117, 137 (2014) .......................................................... 9

*Fed. Trade Comm'n v. Educare Centre Servs., Inc.,*
  414 F. Supp. 3d 960, 983 (W.D. Tex. 2019) ......................... 7

*Herman v. Cataphora, Inc.,*
  730 F.3d 460, 464 (5th Cir. 2013) .................................... 7, 7

*Hertz Corp. v. Friend,*
  559 U.S. 77 (2010) ................................................................ 10

*Lifetime Indus., Inc. v. Trim-Lok, Inc.,*
  869 F.3d 1372, 1376–77 (Fed. Cir. 2017) ......................... 12

*MEMC Electr. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,*
  420 F.3d 1369, 1378 (Fed. Cir. 2005) ................................ 11

*Pace v. Cirrus Design Corp.,*
  93 F.4th 879, 898 (5th Cir. 2024) ...................................... 9

*Telecomm Innovations, LLC v Richoh Company, Ltd,*
  966 F. Supp. 2d 390 (D. De 2017) ..................................... 12

*Trinity Industries, Inc. v. Myers & Assocs., Ltd.,*
  41 F.3d 229, 230 (5th Cir. 1995) ....................................... 7

*U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.,*
  727 F.3d 343, 348 (5th Cir. 2013) ................................... 7, 7

*Uviado, LLC ex rel. Khan v. U.S. ex rel. I.R.S.,*
  755 F. Supp. 2d 767, 768 (S.D. Tex. 2010) ....................... 10

**Other Authorities**

*28 U.S.C. § 1-400(b)* ............................................................. 9

*35 U.S.C. § 271(b)* ................................................................. 11

Plaintiff Max A. Rady ("Plaintiff" or "Dr. Rady"), by his attorneys, Sorey & Hoover, LLP and Whiteford, Taylor & Preston LLP, respectfully files this Opposition to the Motion to Strike Plaintiff's Second Amended Complaint and Reply in Further Support of Motion to Dismiss (ECF 51) filed by Defendants Pan-Industrial LLC, Pan Industrial Platforms LLC, and Pan Industrial Services LLC (collectively, "Pan Industrial"), and in support thereof states:

### INTRODUCTION

Pan Industrial's Motion relies almost exclusively on the Declaration of Michael Schwartz in its attempt to avoid the jurisdiction of this Court. Mr. Schwartz's Declaration, however, paints a carefully crafted, but notably incomplete, picture of Pan Industrial's activities that, when viewed alongside the newly discovered evidence presented herein, is misleading in material respects. Mr. Schwartz characterizes Pan Industrial as dormant shells—a passive holding company and an entity with no operations, no products, no employees, and no connection whatsoever to Texas or this District. Schwartz Decl. ¶¶ 2–10. What Mr. Schwartz conspicuously fails to disclose, however, is that Pan Industrial's co-founder, Austin Fatheree—a co-owner and the self-described "sole contributor" to Pan Industrial's Labs Group—has been continuously working from his home office in Houston systematically developing the very codebase and infrastructure on which the accused Origyn Minting Box depends. Exhibit A attached (GitHub commit logs).[1] Hundreds of code commits to Pan Industrial's own repositories, timestamped in the United States Central Time Zone, and copyrighted by PanIndustrial.com, demonstrate that the company's core technical work has been performed in this District on a regular and ongoing basis. Exhibits A-E attached. Mr. Schwartz also fails to disclose that Pan Industrial actively markets itself on its own website

---

[1] References to numbered exhibits refer to exhibits to the Second Amended Complaint filed January 12, 2026 at ECF 44-1 through 44-34.  References to exhibits bearing a letter refer to recently discovered evidence identified by Dr. Rady and filed contemporaneously with this opposition.

(www.panindustrial.com) as an innovation ecosystem offering AI and next-generation cloud services for global enterprise—not a passive entity with no operations—all while holding itself out as Origyn's Certified Integration Partner. Exhibit F attached.

Likewise absent from Mr. Schwartz' Declaration is any mention of ICDevs.org, a Texas nonprofit registered at Mr. Fatheree's Houston address, through which Pan Industrial develops the ICRC standards that directly support the Origyn protocol's interoperability and functionality which serves as the core of the infringing Origyn Minting Box. Exhibits G – J attached. In short, Mr. Schwartz directed the Court's attention to the Pan Industrial Defendants' nominal corporate registrations while conveniently withholding any discussion of the actual and significant business activities, development work, and commercial relationships that Pan Industrial is conducting from this District—activities that go directly to the heart of the claims at issue in this case and which provide more than sufficient grounds for this Court to exercise jurisdiction over Pan Industrial and to determine that venue is proper.

## FACTUAL BACKGROUND

With its Motion to Dismiss, Pan Industrial avoids, for the most part, the allegations in the Second Amended Complaint (the "Complaint" - ECF 44) in the hopes of avoiding having to defend itself in this Court for its infringing activity. But when the allegations of the Complaint are reviewed, particularly those included in Par. 18 and Par. 96, along with additional information recently discovered by Dr. Rady, it is clear that this Court should exercise personal jurisdiction over Pan Industrial and that venue is appropriate here.

In this regard, Dr. Rady asserts in his Complaint that the Origyn Foundation and Origyn Research USA, LLC (collectively, "Origyn"), which operate out of offices in Houston, are creating digital twins of real-world assets ("RWAs") through its product known as the Origyn Minting Box,

2

a product that utilizes and relies on processes which infringe US Patents Nos. 12,375,261 and 12,401,496 (the "Asserted Patents"), both of which are owned by Dr. Rady. *See, e.g.,* ECF 44 at 1 and 17. In order to commercialize and convince users to adapt this technology, Origyn set up an Integrator Program to bring large industry players into the real-world asset infrastructure of Origyn, outsourcing the enterprise-facing aspects of Origyn's operations to integrators to ensure that Origyn's technology (the infringing Origyn Minting Box and the processes which it executes) can be scaled and adopted across industries. To this end, Pan Industrial is Origyn's first, *and only*, anointed integrator. ECF 44 at 18.

Pan Industrial is actively doing substantial business in Texas, including partnering with Origyn in its Houston office and with ICDevs.org (www.icdevs.org),[2] a Texas non-profit, to build the infrastructure necessary to "plug large industry players into the real world asset infrastructure of Origyn," and "integrate Origyn's decentralized certification infrastructure [the Origyn Minting Box and associated code] directly into their services." ECF 44 at 96. *See also,* www.origyn.com[3]; www.panindustrial.com[4]; www.youtube.com/watch?v=KLElm8cqkyI[5];

---

[2] On its website (www.icdevs.org), ICDevs.org states that it seeks to provide the public with community organization, educational resources, funding and scientific discovery for the use and development of the Internet Computer and related technologies. It pursues activities such as developer funding and scientific and technology development to support diversity and decentralization of the Internet Computer ecosystem. Simply put, developers can utilize the resources of this Texas non-profit to develop algorithms and new code for the Internet Computer. This is precisely what Origyn and Pan Industrial are doing through the resources of ICDevs.org. In support of its activities, its website requests that donations be mailed to 27410 Villa Mountain Ct., Fulshear, TX 77441 – the home and office address of Austin Fatheree ("Mr. Fatheree"), Pan Industrial's co-founder and owner. Last accessed March 6, 2026.

[3] Origyn's website (https://www.origyn.com) directs consumers to its "Integrator" program designed to guide new partners integration with Origyn, and highlights ICRC standards developed by Pan Industrial/ICDevs for Origyn's NFTs and cross-chain interoperability. Last accessed March 6, 2026.

[4] Pan Industrial's website (https://www.panindustrial.com) states that Pan Industrial is a "Certified Integration Partner" of Origyn. Again, it is the Origyn Minting Box that Dr. Rady asserts infringes his patents. Last accessed March 6, 2026.

[5] In this video interview, Austin Fatheree (https://www.youtube.com/watch?v=KLElm8cqkyI) introduces himself as representing Origyn Foundation, Pan Industrial, and ICDevs and talks about how he is building ICRC standards to allow Origyn's NFT's to move across different blockchains, a necessary component of the Origyn Minting Box. Last accessed March 6, 2026.

www.youtube.com/watch?v=qgoJWCIXehU[6]; Exhibit H  attached (Austin Fatheree "skilesare" is "Lead Backend Developer & Blockchain Architecture" for "ICDevs.org/Pan Industrial"); Exhibit J attached (Austin "skilesare" Fatheree/ICDevs develops ICRC standards used by Origyn for its NFT metadata); Exhibit K attached (The ICRC standards designed by ICDevs support the development of Real-World Asset (RWA) ledgers); and Exhibit L attached (Origyn Foundation engineer confirms that ICDevs' ICRC standards allow for storing a fingerprint of a real world asset (RWA) with geolocalisation for validation/certification purposes).

As the Complaint further alleges, Austin Fatheree, whose roles include Origyn CTO from 2012 to 2024, co-founder and owner of Pan Industrial since March 2023, and, as recently discovered, the founder and Executive Director of ICDevs.org since October 2021, is, and has been, according to his LinkedIn profile (*see* Exhibit M attached), actively working in this District to achieve the vision of both the Origyn Foundation and Pan Industrial to allow for the wider adoption of, and accessibility to, the infringing Origyn platform by large industry players. *See, e.g.,* ECF 44 at 96. In this regard, Mr. Fatheree is the "Lead Backend Developer & Blockchain Architect" for "ICDevs.org/Pan Industrial" responsible for creating, developing, and implementing the infrastructure necessary to receive, store, and manage data generated by the Origyn Minting Box used to create the unique digital signatures[7] incorporated in the NFTs hosted on Dfinity's Internet Computer blockchain.  *Id*. In this regard, Mr. Fatheree has built and continues

---

[6] In this video interview, Austin Fatheree (https://www.youtube.com/watch?v=qgoJWCIXehU) introduces himself as representing Pan Industrial and ICDevs, describes himself as the "sole contributor" to Pan Industrial's "Labs Group" and discusses how Pan Industrial's "Services Group" works with the big four accounting firms and management consulting firms who introduce Pan Industrial to their clients to help them launch web3 platforms. Last accessed March 6, 2026.

[7] As asserted at footnote 38 of the Complaint, the unique identifiers that are generated by infringing scanning machines are sometimes referred to by various names, including "digital fingerprint," "fingerprint," "signature," "unique signature," "Tracr ID," "Stone ID," "Global Diamond ID," "UUID (universal unique identifier)," "digital twin," "digital replica," "digital product passport," "digital passport," and "virtual twin."

to build the infrastructure required for interoperability of the Origyn Minting Box with both the Dfinity Internet Computer and Ethereum blockchains (Ethereum being the most well-known and often used blockchain), to allow full visibility and communication for authenticity and traceability of real-world assets across both of these platforms. *Id*.

Interoperability between the Dfinity and Ethereum blockchains is critical for Origyn's technology to be effective. Specifically, Origyn is using its Origyn Minting Box to scan diamonds for the International Gem Institute ("IGI") and uploading the NFT's for those diamonds on Dfinity's blockchain. ECF 44 at 28; 137; and 144. Meanwhile, De Beers's Tracr platform for diamond provenance and tracking relies on the Ethereum blockchain. Origyn cannot claim that it can provide reliable diamond provenance and tracking if the NFT's for most of the world's diamonds reside on a different blockchain that cannot "talk" to Origyn's blockchain. All of this capability and functionality evolved from Pan Industrial's work in this District.

Further, working in this District, Pan Industrial and ICDevs, through Mr. Fatheree, have built a distributed system, infrastructure, and codebase/source code, along with the associated specifications necessary to receive, store, and manage on these blockchain technologies the unique digital signatures and associated NFTs generated by the Origyn Minting Box. ECF 44 at 96. This work is stored across a number of public and private repositories on GitHub[8] which reveal the owner of the code, the author of the code, and the time/time zone and date the code (or revision thereof) was committed to the repository. Examples of this codebase/source code available in the GitHub public repositories include ICRC NFT, ICRC 3, ICRC 7, ICRC 37, ICRC 48, ICRC 72,

---

[8] GitHub is a cloud-based platform that uses Git version control to help developers store, manage, and collaborate with one another on software development projects. It acts as a central hub where teams can share code, track changes, and work together on projects from anywhere. GitHub hosts code in public and private repositories, which are widely used for version control, code review, and project management.

and evm-dao-governance, all of which were written in the Central Time Zone (according to GitHub time zone logs[9]) by Pan Industrial, or on behalf of Pan Industrial by ICDevs/Mr. Fatheree using various accounts and emails attributable to him. Exhibits A-E attached. Each of these code sections are owned and copyrighted by Pan Industrial and are necessary for the use and operation of the Origyn Minting Box. *Id*.

Pan Industrial does not dispute that Mr. Fatheree, the Origyn Foundation's Chief Technical Officer and Pan Industrial's co-founder and owner, actively promotes the use of Pan Industrial and Origyn's digital twin authentication program and Minting Box; the very technology that Dr. Rady asserts infringes the Asserted Patents. At two separate public appearances and in interviews where he represents himself as representing both Pan Industrial and Origyn, Mr. Fatheree invites the public to contact him at his office in Houston to learn more about the infringing technology. ECF 44 at 18; 96; *see also* (https://www.youtube.com/watch?v=KLElm8cqkyI).[10]

While Pan Industrial may be organized in Delaware and list its principal place of business in California, the only operations in which it appears to be engaging are those related to the continued development of the infringing Origyn Minting Box and associated protocols necessary for the successful use and implementation of that infringing technology; all of which is being done in this District in partnership with a closely related Texas non-profit operating in this District. As a result, Pan Industrial should not avoid being hailed into this Court where the asserted liability arises from the development, manufacture, use, and sale of that precise technology.

## **ARGUMENT**

---

[9] GMT-6:00, or UTC-6, is the Central Standard Time (CST) zone in the United States during the winter months. During Daylight Saving Time (summer), these areas shift to GMT-5:00 or UTC-5 (Central Daylight Time).

[10] In this video interview, Mr. Fatheree introduces himself as representing Origyn Foundation, Pan Industrial, and ICDevs. Last accessed March 6, 2026.

I.      **The Court Can Exercise Specific Personal Jurisdiction Over Pan Industrial Due to Its Connections with Origyn and the Actions of Mr. Fatheree.**

Where a defendant has "purposefully availed [itself] of the privilege of conducting activities in-state," it is appropriate for a court in that state to exercise jurisdiction over that defendant. *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013) (quoting *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990)). This finding may even "arise incident to the commission of a single act directed at the forum[.]" *Id.* The Fifth Circuit has made clear that courts must take a "'highly realistic' approach to deciding where a defendant has established the requisite minimum contacts." *Trinity Industries, Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 230 (5th Cir. 1995) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

As alleged in the Complaint, Pan Industrial regularly and continuously conducts activities in this jurisdiction sufficient to be haled into this Court. Specifically, Pan Industrial is Origyn's only integrator for purposes of creating, developing, marketing, and selling the infringing Origyn Minting Box. ECF 44 at 17–18. The activities of Pan Industrial in conjunction with Origyn's Integrator Program are indivisible from the actions furthered by Origyn (through its Houston office) as well as ICDevs.org.

Moreover, it is well-settled that a "corporation is only a legal entity and strictly speaking it cannot act or have a mental state by itself." *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 348 (5th Cir. 2013) (internal quotations omitted). To this end, "the acts and mental states of its agents … will be imputed to the corporation where such natural persons acted on behalf of the corporation." *Id.* The same is true for jurisdictional purposes, where the acts of an agent of a company "are commonly the basis for a corporation's contacts with a forum," if "act[ing] as the agent of the corporation" at the time. *Fed. Trade Comm'n v. Educare Centre Servs., Inc.*, 414 F. Supp. 3d 960, 983 (W.D. Tex. 2019).

Mr. Fatheree, Origyn's CTO, co-founder and owner of Pan Industrial, and Executive Director of ICDevs.org, regularly and continuously works in this District to further the infringing conduct of the Origyn Foundation and Pan Industrial. ECF 44 at 96. Mr. Fatheree is responsible for the creation, development, and implementation of the infrastructure necessary for the infringing Origyn Minting Box and its blockchain interoperability and cross-minting[11] RWAs across different blockchains to allow for the seamless representation and transfer of Origyn's NFTs between those different blockchains. ECF 44 at 96. In addition to this work which is integral to the Origyn Minting Box, Mr. Fatheree regularly, on behalf of Origyn and Pan Industrial, markets the infringing products, and invites the public to contact him electronically at his office in Houston. ECF 44 at 18; 96. In his capacity as an agent of Pan Industrial, Mr. Fatheree repeatedly and continuously avails himself of the privilege of conducting business activities in this District. While Pan Industrial may be incorporated in Delaware, a "highly realistic" view of Pan Industrial's business activity reveals that the vast majority, if not all, of its business is done through its co-owner, who works and resides in this District. When coupled with Pan Industrial's inextricable connection with Origyn, which maintains an office in Houston, Pan Industrial's contacts with this jurisdiction far exceed the showing required for the Court to exercise personal jurisdiction over them.[12]

---

[11] Cross-minting an NFT generally refers to the process of creating, transferring, or purchasing a non-fungible token across different blockchain networks, or using specialized services to facilitate multi-chain functionality. A key aspect of cross-minting is interoperability which allows for the transfer of digital assets between multiple platforms.

[12] While Dr. Rady maintains that the Complaint's allegations are more than sufficient to demonstrate this Court's exercise of personal jurisdiction over Pan Industrial, when presented with a motion to dismiss for lack of personal jurisdiction, "[t]he court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Accordingly, if the Court determines additional factual bases are required for the jurisdictional analysis, Plaintiff respectfully requests leave to conduct discovery on the nature and extent of Pan Industrial's activities in Texas, generally, and this District specifically.

II.    **The Court Can Exercise General Personal Jurisdiction Over Pan Industrial Because Its Operations are Sufficiently Substantial as to Render Pan Industrial at Home in Texas.**

In addition to being able to exercise specific jurisdiction over Pan Industrial, the Court may likewise exercise general jurisdiction over it due to its extensive and continued actions in Texas. In this regard, the Fifth Circuit has recognized that general jurisdiction may be exercised where circumstances allow a company's operations to be considered "'substantial and of such a nature as to render the corporation at home in' the forum" even if that forum is not the listed place of incorporation or principal place of business. *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 898 (5th Cir. 2024) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

Pan Industrial, by and through Mr. Fatheree, regularly and consistently encourages the public to contact Pan Industrial not in California, but at his office in Houston.  ECF 44 at 18; 96. This is because the nexus of Pan Industrial's work, and in particular, its infringing activity orchestrated in conjunction with Origyn, is centered in Houston.  Further, there is no evidence of Pan Industrial's business activity in any forum other than Texas besides the nominal assertion that its principal place of business is in California. Because a substantial amount of Pan Industrial's activities (if not all) are centered in Houston, it may fairly be considered to be "at home" in Texas, and accordingly, the Court may exercise general jurisdiction over Pan Industrial.

III.    **Venue is Proper in this District Because Pan Industrial Has Committed Acts of Infringement and Established a Place of Business Here.**

Pursuant to 28 U.S.C. § 1400(b), an action for patent infringement may be brought "where the defendant has committed acts of infringement and has a regular and established place of business."  As discussed above, Pan Industrial continues to commit acts of infringement within this District through its continuous and systematic partnership and contacts with Origyn and Mr. Fatheree.  Pan Industrial argues that its principal place of business is in California.  However,

9

nominally identifying a location as a "principal place of business" is insufficient; rather, a company's principal place of business is its "nerve center," or the "actual center of direction, control and coordination" for the business. *See Uviado, LLC ex rel. Khan v. U.S. ex rel. I.R.S.*, 755 F. Supp. 2d 767, 768 (S.D. Tex. 2010) (citing *Hertz Corp. v. Friend*, 559 U.S. 77 (2010)). Here, as explained above, that nerve center, or actual center of direction and control is Houston.

Pan Industrial has not provided any information regarding its business activities in California or any other state. Indeed, the only allegations or evidence in this litigation regarding Pan Industrial's activities and place of business concern its involvement with Origyn and the work of Mr. Fatheree, all of which arises from activities that take place in this District. Despite Pan Industrial's attempts to downplay these connections, the allegations of the Complaint demonstrate that Pan Industrial and Mr. Fatheree conduct regular (if not exclusive) business in and from this District, regardless of where the "principal place of business" is listed. As such, venue is proper in this District.

## IV.    Leave to Amend Is Not Required Because a Scheduling Order Has Not Been Entered.

Pursuant to this Court's Standard Patent Case Order Setting Initial Case Management Conference and Scope of Discovery, the Parties are directed to "make a good faith effort to jointly propose Scheduling Order deadlines for this case, in accordance with the Patent Case Scheduling Order Template available on the Court's website." ECF 3. That Order further states that "the parties may agree to propose to adjust deadlines suggested in the Template." *Id.* In turn, the default Scheduling Order Template sets out a standard deadline to Amend Pleadings which is 9 weeks after Preliminary Invalidity Contentions and 17 weeks after the Scheduling Conference.  The Template further provides that "***it is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings.***"

While no scheduling order has been entered in this case, combining the language of ECF 3 with the Scheduling Order Template makes clear that the Court does not want to be bothered with motions for leave to amend until the case is much farther along than the instant matter. As such, Dr. Rady was not required to seek leave to file the Second Amended Complaint. These points were all communicated to Pan Industrial's counsel before the Motion to Strike was filed, but, undaunted, the Motion was filed anyway.  Pan Industrial's attempt to strike the Second Amended Complaint should be denied.[13]

## V.    Dr. Rady's Second Amended Complaint Sufficiently Asserts Claims for Inducement to Infringe the Asserted Patents.

As with its personal jurisdiction and venue arguments, Pan Industrial fails to engage many of the allegations in Dr. Rady's Complaint in an attempt to support its assertion that the Complaint fails to state a claim for inducement to infringe. In this regard, Pan Industrial focuses solely on Plaintiff's assertion that Pan Industrial is the "sole integrator" of the infringing Origyn Minting Box technology without analyzing the activities in which Pan Industrial engages and the implications of Pan Industrial's activities as the sole integrator.  While Plaintiff believes that Pan Industrial's status and activities as Origyn's sole integrator is more than enough to state a claim for inducement, the Complaint includes many additional allegations to support his inducement claim.

As the Court is well aware, Section 271(b) of the Patent Act provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." *35 U.S.C. § 271(b)*. To succeed on such a claim, the patentee must show that the accused infringer (1) knowingly induced direct infringement and (2) possessed "specific intent" to induce that infringement. *See, e.g., MEMC Electr. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). "A complaint must plead facts plausibly showing that the accused infringer 'specifically intended

---

[13] If, however, the Court disagrees, Dr. Rady requests the opportunity to seek leave to file his Second

[another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376–77 (Fed. Cir. 2017).

Here, and as detailed above, the sole purpose for incorporating Pan Industrial and its partnering with Origyn (ECF 44 at 17) is to "plug large industry players into the real-world asset infrastructure of Origyn" and "integrate Origyn's decentralized certification infrastructure [the Origyn Minting Box and associated code] directly into their services." ECF 44 at 96. BCG was unquestionably aware of Plaintiff's pending patent application. *See, e.g.*, ECF 44 at 60, 64, 65, 70 and 74. Moreover, Origyn and Pan Industrial founders and principals, Mike Schwartz and Austin Fatheree, were both intimately involved in BCG's Project Midnight which formed the basis of Plaintiff's prior lawsuit against BCG where an earlier patent claiming priority to the same application as the Asserted Patents here was asserted (ECF 44 at 51). As a result of this close relationship with BCG, as well as their principals' involvement in Project Midnight and awareness of Plaintiff's prior litigation against BCG, this Court can readily infer that both Origyn and Pan Industrial were also aware of the Plaintiff's patent application that led to issuance of the Asserted Patents.[14]

Pan Industrial's status as Origyn's sole integrator cannot simply be side stepped for purposes of this analysis as Pan Industrial wishes the Court to do. As Mike Schwartz, co-founder of both Origyn and Pan Industrial, announced: "In order to effectively scale industry's use of the Origyn Protocol's services and fully realize its growth potential, it has become necessary to leverage Origyn-certified system integrators who possess the bandwidth and skills to service industry participants in their quest to leverage Origyn's Web 3.0-based Real World Asset (RWA) infrastructure." ECF 44 at

---

[14] Even if Pan Industrial's pre-suit activity is not found sufficient, its continued infringing activities since the filing of this litigation are certainly sufficient to establish that Pan Industrial knew that its activities were infringing. *See, e.g., Telecomm Innovations, LLC v Richoh Company, Ltd*, 966 F. Supp. 2d 390 (D. De 2017) (there is no legal impediment to having an indirect infringement cause of action arising from post-litigation conduct).

96. This announcement goes onto state that "organizations wishing to explore leveraging the Origyn's Protocol's industry leading RWA infrastructure can contact Pan Industrial via info@panindustrial.com."[15]  *Id.*

Pan Industrial promotes Origyn's Minting Box knowing it requires the use of an infringing scanning machine.  *Id.* at 96. In an article, the Origyn Foundation described the role of integrators as playing "a crucial role in expanding the Origyn's reach and impact across various industries. These certified integrators leverage Origyn's technology in their own systems and solutions, bringing the benefits of asset certification to new markets and industries.... We like to see "the Integrator (of which Pan Industrial is the only one) as the bees pollinating flowers; the integrator facilitates interactions between different industries and enhances the ecosystem's functionality.  By integrating new partners and leveraging their expertise, the integrator helps the ecosystem flourish and evolve."  *Id.*   Later, in a separate promotional video, Origyn described Pan Industrial as the "first anointed integrator to go out and bring large industry players to plug them into the real-world asset infrastructure of Origyn." *Id.*

It is this infrastructure that constitutes the infringing technology and methods developed and promoted by Pan Industrial.  ECF 44 – 28 and 31.[16] Pan Industrial cannot avoid inducement claims by asserting that it is nothing but a promoter of the technology when its own public statements, as well as those of its partner Origyn, make clear that Pan Industrial is tasked with bringing large industry players to "plug them into" the infringing technology because it possesses the necessary bandwidth and skills to service these partners and that it acts like bees pollinating flowers to facilitate different

---

[15] This email account is one of the email accounts used by Mr. Fatheree to commit code in GitHub as discussed above.

[16]      Plaintiff specifically alleges that the Origyn Minting Box meets each and every limitation of both of the Asserted Patents and that Pan Industrial, along with Origyn, are actively inducing others to infringe at least one claim of each such patent, knowing that the Minting Box and other scanning machines, or their use, directly infringe these patents.  ECF 44 at 169; 191.

industries use of the infringing technology.  Plugging users into the infringing technology and promoting their use of that technology by facilitating interactions and enhancing the user ecosystem is precisely the type of activity that can properly form the basis of an inducement claim. As such, Pan Industrial's motion to dismiss Dr. Rady's inducement claims should fail.

**WHEREFORE**, Plaintiff Max A. Rady respectfully requests the Court deny the Pan Industrial Defendants' Motion to Strike Plaintiff's Second Amended Complaint and Reply in Further Support of Motion to Dismiss.

March 6, 2026                                  Respectfully submitted,


                                               */s/ Karl Rupp*
                                               Karl Rupp
                                               Texas State Bar No. 24035243
                                               Sorey & Hoover, LLP
                                               100 N. 6th Street, Suite 503
                                               Waco, Texas 76701
                                               Telephone: 254.265.6817
                                               Facsimile: 903.230.5656
                                               krupp@soreylaw.com

                                               Steven E. Tiller, MD Federal Bar No. 11085
                                               (*pro hac vice* motion granted)
                                               stiller@whitefordlaw.com
                                               Peter J. Davis, MD Federal Bar No. 14069
                                               (*pro hac vice* motion to be filed)
                                               pdavis@whitefordlaw.com
                                               Whiteford, Taylor & Preston, LLP
                                               Seven Saint Paul Street – Suite 1500
                                               Baltimore, Maryland 21202-1636
                                               Telephone:  410.347.8700

                                               *Attorneys for Plaintiff Max Rady*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document has been delivered to all counsel of record via the Court's CM/ECF service and/or electronic transmission on this 6th day of March, 2026.

*/s/ Karl Rupp*